# Exhibit A

## AGREEMENT BETWEEN THE DNC AND PRESIDENTIAL CAMPAIGN COMMITTEES REGARDING USE OF DNC NATIONAL VOTER FILE DATA

This Agreement is made and entered into on this _____ 26th _____ day of _____ October _____, 2015 (the "Effective Date"), by and between the DNC Services Corporation/Democratic National Committee (the "DNC") and Bernie 2016 the authorized committee of Bernard Sanders for candidacy for the Democratic nomination for President (the "Campaign"), witnesseth:

In consideration of the mutual covenants set forth herein, the parties agree as follows:

1. **Scope of access.** The DNC agrees to provide the Campaign access to the Licensed Fields as defined herein for all voter file records in the DNC's National Voter File for the States listed in Exhibit A hereto (the "Licensed States").

2. **Licensed Fields.** For purposes of this Agreement "Licensed Fields" shall mean and include the following data fields from voter file records contained in the DNC's National Voter File: all basic demographic/geographic data (name, address, jurisdiction); email addresses to the extent that they exist in the source voter registration data; voter registration status; telephone number(s); vote history, including caucus participation; commercially acquired consumer data; ethnicity information; political party preference/ registration/affiliation data; and, except for data appended or added by other committees of candidates for the Democratic nomination for President to such field(s) during calendar years 2015 or 2016, IDs, party score information, political candidate preference data, and other modeling data or scores selected by the DNC. All data in the Licensed Fields in the voter files maintained in the DNC's National Voter File for the Licensed States is hereby collectively referred to as the "DNC Voter File Data." For purposes of this Agreement, voter file records include active registrants, previous registrants, people for which there is a record but have never registered, and deceased registrants.

3. **Licenses.**

   a. The DNC hereby grants to the Campaign a non-exclusive license to access and use the DNC Voter File Data for a term beginning on the Effective Date and terminating the sooner of the date the Campaign's candidate drops out of the election for the Democratic nomination for President or the date of the of 2016 Democratic National Convention, unless the Campaign's candidate secures the Democratic nomination for President, in which case the license will extend until December 31, 2016 (the "License Term").

   b. The Campaign shall not sell, transfer or otherwise convey the DNC Voter File Data to any other person or entity without the express prior written approval of the DNC, provided that the Campaign may provide access to the DNC Voter File Data to one or more vendors to the Campaign for the sole purpose of providing services to the Campaign to enable the Campaign to use the DNC Voter File Data pursuant to the terms and conditions of this Agreement; and provided further that any such vendor signs a written agreement to be bound by the

provisions of this section 3. The DNC agrees to provide the Campaign via counsel with a form agreement to be provided by the Campaign to its vendor(s).

c. The Campaign shall have the right to add or append its own data to the DNC Voter File Data during the term of this Agreement (the "Campaign Data"). The Campaign shall own and retain all worldwide, intellectual property rights in and to the Campaign Data.

d. The DNC hereby grants to the Campaign a non-exclusive and perpetual license to the basic voter contact information (name, address, phone number(s), registered party if maintained in the government's record, jurisdiction, elections official assigned record ID) associated with any record to which material, substantive Campaign Data was appended during the term of this Agreement and the Campaign retains the right to transfer such DNC Voter File Records to any political entity.

e. The Campaign hereby grants the DNC the right to use all voter contact data collected by the Campaign during the Licensed Term. The Campaign additionally hereby grants the DNC the right to perform modelling off all Campaign volunteer data during the Licensed Term and grants the DNC full ownership rights to any models created using the Campaign volunteer data, provided that the DNC maintains no right to otherwise use the underlying volunteer data during the Licensed Term. Upon termination of the Licensed Term, the Campaign grants to the DNC a perpetual, irrevocable license to use all Campaign Data including voter contact data, volunteer data, acquired demographic and specialty data, updated phone number and address information and modeling scores, but excluding any email addresses. The Campaign further grants to the DNC the right to provide such data to Democratic State Parties, Democratic candidate committees, and other entities as may be agreed upon by the Campaign and the DNC, except that the DNC shall not share volunteer information, support scores or other types of data as subsequently agreed between the Parties, without the prior consent of the Campaign.

f. Except as otherwise provided in section 3(e) above, the DNC shall not sell or knowingly transfer Campaign Data to any third party without the express, prior written consent of the Campaign. The DNC agrees to use security measures, with respect to the Campaign Data, that are consistent with good practices in the data processing industry.

4. **Form of Access.** Access to the DNC Voter File Data will be provided to the Campaign via the DNC Analytics Platform and through the Voter Activation Network ("VAN") interface for which the DNC and State Parties have a license, ("VoteBuilder"). The Campaign will be provided with user accounts for the DNC Analytics Platform as requested for users that are deemed by the DNC as reasonably skilled to operate the accounts. The DNC will provide the Campaign with synchronization services to synchronize Campaign data in the DNC Analytics Platform with data in other systems the Campaign chooses to use. The DNC will provide the Campaign with DNC Command Hub to administer the synchronization services and monitor the

- 2 -

Campaign Data. The Campaign will be provided with a national VoteBuilder administrator account with the standard privileges and capabilities associated with such account. In each Licensed State, the State Party's VoteBuilder administrator will serve as the Campaign's point of contact and will provide user support to the Campaign. In the absence of a qualified State Party administrator, the Campaign will be granted State Party administrator rights and receive user support from the DNC directly. Access to Vote Builder in accordance with the terms hereof and the national administrator account will be provided by the DNC to the Campaign within 3 calendar days of execution of this Agreement.

5.  **Term and Termination.**

    a.  This Agreement shall come into effect on the Effective Date and shall continue in effect through and including the License Term, unless this Agreement is sooner terminated pursuant to section 5(b) or section 10.

    b.  Either party may terminate this Agreement in the event that the other party breaches this Agreement; the non-breaching party sends written notice to the breaching party describing the breach; and the breaching party does not cure the breach to the satisfaction of the non-breaching party within ten (10) calendar days following its receipt of such notice.

    c.  Any and all rights and licenses granted to either party under this Agreement shall terminate immediately upon termination of this Agreement by its terms or for any other reason, pursuant to this section 5 or otherwise, except as specifically permitted under this Agreement.

6.  **Confidentiality.** "Confidential Information" means all information disclosed by the Campaign to the DNC at any time, either directly or indirectly in writing, orally or by inspection of tangible objects, that arises from or in any way relates or pertains to the Campaign or its business including, without limitation, the existence and content of this Agreement, and all information generated by the DNC, whether by itself or through or in conjunction with third parties, based in whole or in part on such information. Confidential Information may also include information disclosed to the DNC by third parties. Confidential Information shall not, however, include any information which the DNC can establish: (i) is or becomes publicly known and made generally available in the public domain through no action or inaction of DNC; (ii) is already rightfully in the possession of the DNC at the time of disclosure, as shown by the DNC's files and records immediately prior to the time of disclosure; (iii) is obtained by the DNC from

- 3 -

a third party without a breach of such third party's obligations of confidentiality; (iv) is independently developed by the DNC without use of or reference to the Campaign's Confidential Information, as shown by documents and other competent evidence in the DNC's possession; or (v) is required to be disclosed by a subpoena or order issued by a court of competent jurisdiction, provided that the DNC gives the Campaign prompt written notice of such requirement prior to such disclosure and assistance in obtaining an order protecting the information from public disclosure.

a. The DNC agrees not to duplicate or use any Confidential Information for any purpose except in furtherance of a business relationship between the DNC and the Campaign. The DNC agrees not to disclose any Confidential Information to third parties or to employees of the DNC, except to those employees with a need to know such Confidential Information. The DNC agrees that it shall take all measures necessary to protect the secrecy of, and to avoid disclosure and unauthorized use of the Confidential Information. Without limiting the foregoing, the DNC shall take at least those measures that the DNC takes to protect its own most highly confidential information and shall have its employees who have access to Confidential Information sign a non-use and non-disclosure agreement in content substantially similar to the provisions hereof, prior to the disclosure of Confidential Information to such employees. The DNC shall immediately notify the Campaign in the event of any unauthorized use or disclosure of the Confidential Information including the full extent of the time, place and manner of the use or disclosure and the corrective steps taken by the DNC to address the unauthorized use or disclosure. The DNC shall not reverse engineer, dissemble or decompile any software or other tangible objects which embody the Campaign's Confidential Information.

7. **Warranties and Representations.** The DNC warrants that it has the legal right to grant to the Campaign the rights and licenses granted herein and has obtained the necessary rights and permissions from the Licensed State Parties and from any software providers including NGPVAN. The DNC makes no warranty or representation with respect to the number of voter records for which data exists in any Licensed Field and makes no warranty or representation with respect to the accuracy of any specific information contained in any record within the DNC Voter File Data. The DNC warrants that its performance under this Agreement shall not be in violation of any applicable laws, rules or regulations. The DNC warrants that the services to be performed under this Agreement shall be performed in a professional and workmanlike manner, consistent with industry standards in the data processing industry, and that the DNC will use best efforts to devote to the business and affairs of the Campaign such portion of the DNC's time and energies as is necessary to perform such services.

8. **Service Levels**. General non-emergency support will be provided by the State Party VoteBuilder administrator during such administrator's normal business hours. VoteBuilder outages will be addressed with a one-hour incident response commitment. The DNC and the Campaign will negotiate in good faith to address and resolve any outages or service issues.

- 4 -

9. **Limitation of Liability**.  Neither party shall be liable to the other party or to any person claiming rights derived from the other party's rights, for indirect, incidental, consequential, special, punitive or exemplary damages of any kind, as a result of breach of any term of this Agreement, regardless of whether the party allegedly liable was advised, had reason to know or in fact knew of the possibility thereof.

10. **DNC's Other Services**.  The DNC agrees that the DNC may provide its services to other individuals or entities, provided that (a) such other independent services shall in no way impair the DNC's ability to provide its obligations and services to the Campaign pursuant to this Agreement; and (b) the DNC shall observe in full in relation to services provided for other individuals or entities the confidentiality requirements set forth in Section 6 of this Agreement.  Should the Campaign determine that the DNC is unable to adhere to its obligations set forth in this paragraph, the Campaign shall have the right to immediately terminate this Agreement at any time and without penalty.

11. **General Provisions.**

   a. Neither party may assign any of its rights or delegate any of its obligations under this Agreement without the express prior written consent of the other party, except as otherwise expressly provided herein.

   b. This Agreement shall be governed by and construed in accordance with the laws of the District of Columbia

   c. Any notice required or permitted to be given or made under this Agreement m a y  be hand delivered or delivered by certified mail, facsimile transmission o r  e m a i l  to the respective party's address specified at the end of this Agreement and shall be effective u p o n  receipt.

   d. This Agreement may be executed in two or more counterparts and all counterparts so executed shall for all purposes constitute but one agreement, binding on both parties.

IN WITNESS WHEREOF, the Parties hereto have caused this agreement to be executed by their duly authorized representatives as of the Effective Date set forth above.

For Bernie 2016:

Name:  John Robinson

Title:  COO

Date:  10|26|15

For the DNC Services Corporation/
Democratic National Committee:

Name:

Title:

Date:

# Exhibit A

**The Licensed States include the following:**

Alabama
Alaska
Arizona
Arkansas
California
Colorado
Connecticut
District of Columbia
Delaware
Florida
Georgia
Hawaii
Idaho
Illinois
Indiana
Kansas
Kentucky
Louisiana
Maine
Maryland
Massachusetts
Michigan
Minnesota
Mississippi

Missouri
Montana
Nebraska
New Jersey
New Mexico
New York
North Carolina
North Dakota
Ohio
Oklahoma
Oregon
Pennsylvania
Rhode Island
South Dakota
Tennessee
Texas
Utah
Vermont
Virginia
Washington
West Virginia
Wisconsin
Wyoming

# Exhibit A-1

# Exhibit A-2

# VOTER FILE LICENSE AGREEMENT

This VOTER FILE LICENSE AGREEMENT ("Agreement") is made and entered into as of this XX day of May, 2015 ("Effective Date") by and between COMMITTEE NAME ("Licensee") and the Iowa Democratic Party ("Licensor").  Licensor and Licensee may be referred to herein, collectively, as the "Parties" and, individually, as a "Party."

NOW, THEREFORE, in consideration of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## 1.      Database License

1.1.   Subject to the terms of this Agreement, Licensor hereby grants to Licensee, and Licensee accepts from Licensor, a worldwide, non-exclusive license to access, reproduce, and use the database of Statewide VAN information created by Licensor (the "Database").

1.2.   During the term of this Agreement, Licensee shall have the right to add data to the Database ("Licensee Data").  Except for the rights provided to Licensee under this Agreement, Licensor shall retain all right, title, and interest in and to the Database, with the exception of Licensee Data.  With the exception of Licensee Data, Licensee may not sell, transfer or otherwise convey the Database to any other person without the express written approval of the Licensor.  Licensee may provide information from the Database to any agent, volunteer, employee or vendor for the sole purpose of providing services to the Licensee to enable the Licensee to use the Database pursuant to the terms and conditions of this Agreement.  Except as provided in the preceding sentence, no information contained in the Database, with the exception of Licensee Data, may be sold, transferred or otherwise conveyed to any person by the Licensee or by any agent or vendor of the Licensee.  Licensee shall be liable for any breach of this Agreement by its agents and vendors.

1.3.   During the period starting from the effective date of this Agreement until the earlier of (i) the date that Senator Sanders ceases to be a candidate for U.S. President or (ii) the day after the 2016 general election, all right, title, and interest in Licensee Data shall belong exclusively to Licensee and Licensor may not access, use, display, reproduce, convey, share, transfer or sell Licensee Data except as with the prior written consent of Licensee.  However, should Senator Sanders become the nominee of the Democratic Party for U.S. President, Licensee Data may also be used by the Licensor as part of a coordinated campaign during the general election on terms agreed to by Licensee.  Further, Licensee hereby grants Licensor a limited license to Licensee Data, solely for the purposes of storing it on the Database and making it available exclusively to Licensee for its own use.  For the avoidance of doubt, there shall be no limitation on Licensee's use of Licensee's data except as required by law.  Beginning after the earlier of (i) the date that Senator Sanders ceases to be a candidate for U.S. President or (ii) the day after the 2016 general election, Licensee hereby grants to Licensor, a worldwide, irrevocable, non-exclusive license to access, reproduce, and use Licensee Data, except that Licensor may only use email addresses contained in Licensee

Data which may only be used to a reasonable extent as mutually agreed between the Parties. For the avoidance of doubt, Licensor does not obtain any license or right to Licensee's donor database or mass email list, other than volunteer email addresses recorded in VAN, under this Agreement.

**2.     The Database**

Licensor shall provide the Database to Licensee in a format capable of operating fully and correctly on the combination of computer equipment, the programming language and the operating system program mutually agreed between the Parties.  Subject to the restrictions and conditions on use of the Database set forth in section 1 of this Agreement, Licensee may create any lists or other digital media for the purpose of its own internal use of the Database.

**3.     Delivery and Updating**

Licensor and Licensee agree that Licensee shall make use of the Database solely through a web server that will be accessed through the Internet via a password protected website provided by Licensor.  Licensor shall make commercially reasonable efforts to deliver the Database and related data on the Effective Date, or on such other date as may be mutually agreed by the Parties.

**4.     Licensee's Upgrades**

Subject to the provisions of section 1.3, nothing in this Agreement shall prevent Licensee from making any modifications, additions, upgrades or changes to Licensee Data, as Licensee in its sole discretion, deems appropriate.

**5.     License Fee and Payment Schedule**

5.1.  In consideration for the license granted herein, Licensee shall pay Licensor a license fee of $120,000. Licensee shall pay the license fee according to a payment schedule agreed to by the Parties attached to this contract as "Schedule B". The amount and schedule of compensation may be further adjusted by a written amendment to this Agreement signed by both parties.

5.2.  Any license fee paid to Licensor hereunder (including but not limited to any prepaid Successive Term License Fee) shall be non-refundable.

**6.     Own Costs**

Except as expressly provided in this Agreement, each Party will be responsible for all costs, expenses, or losses incurred by it in connection with the negotiation, execution and performance of this Agreement.

**7.      Term and Termination**

7.1.      This Agreement shall come into effect as of the Effective Date and shall continue in effect until December 31, 2016, unless the Agreement is sooner terminated pursuant to section 7.3.

7.2.      Either Party may terminate this Agreement immediately for Cause.  As used in this Agreement, "Cause" means, with respect to any Party to this Agreement, a material breach of this Agreement; provided that (i) the non-breaching Party sends written notice to the breaching Party describing the breach in reasonable detail, and (ii) the breaching Party does not cure the breach within ten (10) days following its receipt of such notice.  Also, Licensor may terminate this Agreement without notice if Licensee becomes disaffiliated with the Democratic Party in any way.

7. 3.      Sections 7.2, 10 and 11 shall survive the termination of this Agreement.

7.4.      Any and all rights and licenses granted to Licensee by Licensor under this Agreement shall terminate immediately upon the termination of this Agreement for any reason.  If this Agreement terminates by its terms pursuant to section 7.1 hereof, Licensor shall provide to Licensee, if Licensee is not otherwise in breach of this Agreement, a copy of the Database, by Licensor in a digital format, for Licensee's own internal use.  Neither such copy nor any information contained therein, in any form, shall be transferred, sold or otherwise conveyed to any other person by Licensee without the express written approval of the Licensor.

**8.      Remedies**

Licensee shall require any agents or vendors to sign confidentiality agreements requiring compliance with the limitations on use of Database set forth in this Agreement. Licensee assumes liability for damages arising from any breach of this Agreement by its vendors and agents, including unauthorized use or disclosure.  Licensee agrees that its obligations hereunder are necessary and reasonable in order to protect Licensor and Licensor's affairs and operations, and Licensee agrees that monetary damages may be inadequate to compensate Licensor for any breach by Licensee of any covenants and agreements set forth herein.  Accordingly, Licensee hereby agrees and acknowledges that any such violation or threatened violation will cause irreparable injury to Licensor and that, in addition to any and all other remedies that may be available, in law, in equity or otherwise, Licensee will be entitled to obtain injunctive relief against the threatened breach of this Agreement or the continuation of any such breach, without the necessity of proving actual damages.

**9.      Warranties & Representations**

9.1.      Licensor makes the following warranties: (i) it owns all right, title and interest in and to the Database; (ii) Licensor represents that it has taken full right, power and authority to enter into this Agreement and to grant the rights granted herein without violating

any other agreement or obligation; (iii) the Database does not and will not infringe or constitute a misappropriation of any intellectual property rights of any third party, or violate any applicable law or regulation; and (iv) its performance under this Agreement will not violate any agreement or obligation between it and a third party or any applicable law, ordinance or regulation.

9.2.    Licensor represents that it has taken such steps to verify the accuracy of the data contained within the Database as are normal and customary in accordance with industry standards. However, Licensor makes no warranties with respect to the accuracy of any specific information within the Database.

9.3.    Licensor makes no warranties or representations, and denies any responsibility, with respect to the legality of any specific uses of the Database other than mentioned in Section 9.1.

**10.    Limitation of Liability**

NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY (OR TO ANY PERSON CLAIMING RIGHTS DERIVED FROM THE OTHER PARTY'S RIGHTS) FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR EXEMPLARY DAMAGES OF ANY KIND, INCLUDING LOST PROFITS, LOSS OF BUSINESS, OR OTHER ECONOMIC DAMAGE, AS A RESULT OF BREACH OF ANY WARRANTY OR OTHER TERM OF THIS AGREEMENT, REGARDLESS OF WHETHER THE PARTY ALLEGEDLY LIABLE WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW OF THE POSSIBILITY THEREOF.

**11.    General Provisions**

(a)    Assignment.  With Licensor's prior written consent, which shall not be unreasonably withheld, Licensee may assign this Agreement to any third party upon written notice to Licensor, so long as such third party does not present in fact or in appearance a conflict with the political goals of the Democratic Party.  Licensor shall not assign this Agreement or delegate performance hereunder without Licensee's prior written consent, which shall not be unreasonably withheld.  Any attempted assignment, transfer or delegation without such prior written consent will be void.  Subject to the foregoing, this Agreement will be binding on and enforceable by the Parties and their respective successors and permitted assigns.

(b)    Entire Agreement.  This Agreement sets forth the entire agreement between the Parties with respect to the subject matter hereof, and may not be modified or amended except by written agreement executed by the Parties hereto.

(c)    Severability.  If any provision of this Agreement is declared by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions of this Agreement shall continue in full force and effect, and the invalid provision shall be replaced by the legal provision which most closely achieves the intent of the invalid provision.

(d)     Governing Law.  This Agreement shall be interpreted in accordance with the laws of the State of Iowa without regard to its conflict of laws rules.  Both Parties irrevocably consent to the exclusive jurisdiction of any State or federal court sitting in the state of Iowa for any legal proceeding arising out of or relating to this Agreement.

(e)     Force Majeure.  If the performance of this Agreement or any obligation under it (except payment of monies due) is prevented, restricted or interfered with by reason of acts of God, acts of government, or any other cause not within the control of either Party, the Party so affected shall be excused from such performance, but only for so long as and to the extent that such a force prevents, restricts or interferes with that Party's performance. Notwithstanding the foregoing, the non-affected Party may terminate this Agreement, without further liability, immediately upon written notice if the force majeure circumstances continue for more than fifteen (15) days.

(f)     No Partnership.  Nothing in this Agreement shall be deemed to place the Parties in the relationship of employer-employee, principal-agent, partners or joint venturers. Neither Party shall represent itself to be an employee, partner, or agent of the other, or enter into any agreement on the other's behalf or in the other's name.

(g)     Notices.  All notices required or permitted to be given or made under this Agreement may be given personally or by certified or registered mail (postage prepaid), reputable commercial courier, by facsimile transmission, by overnight mail or as otherwise agreed upon in writing to the respective Party's address specified at the end of this Agreement, and shall be effective upon receipt.  Either Party may change its address by written notice to the other.

(h)     Waiver.  No waiver by either Party, whether express or implied, of any provision of this Agreement shall constitute a continuing waiver of such provision or a waiver of any other provision of this Agreement.  No waiver by either Party, whether express or implied, of any breach or default by the other Party, shall constitute a waiver of any other breach or default of the same or any other provision of this Agreement.

(i)     Paragraph Headings.  Paragraph headings contained herein are for the convenience of the Parties only.  They shall not be used in any way to govern, limit, modify, or construe this Agreement and shall not be given any legal effect.

(j)     Counterparts.  This Agreement may be executed in two or more counterparts and all counterparts so executed shall for all purposes constitute one agreement, binding on all Parties hereto.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date set forth above by their duly authorized representatives.

COMMITTEE NAME                          IOWA DEMOCRATIC PARTY:


By: _____         By: _____
Its: _____        Its: _____

Address:                                Address:_____Iowa Democratic Party
                                        _____5661 Fleur Drive
                                        _____Des Moines, Iowa 5021
Fax No:_____         Fax No: _____
Attn: _____        Attn: _____

**Voter File License Agreement**
**Schedule B – Statewide Access**

**1. The Database**

1.1. The Licensee **COMMITTEE NAME** will pay the Licensor (Iowa Democratic Party) a sum of **$120,000** for VAN access.

1.2. The term of access will commence upon the receipt of payment.

1.3. Payment must be received by the Iowa Democratic Party, along with a signed contract, before VAN access will be activated.

1.4. Payments are to be received by the Iowa Democratic Party no later than the scheduled due dates unless an additional grace period is granted, in writing, by the Executive Director.  If payments are not received by the scheduled due dates, unless otherwise approved in writing by the Executive Director, VAN access may be terminated without written notice until payment is received.

1.5. **COMMITTEE NAME shall make payments according to the following schedule:**

$60,000 due July 1st, 2015
$10,000 due July 31st, 2015
$10,000 due August 31st, 2015
$10,000 due September 30th, 2015
$10,000 due October 31st, 2015
$10,000 due November 30th, 2015
$10,000 due December 31st, 2015