IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


BERNIE 2016, INC.,
       Plaintiff,              CA No. 15-2211

                               Washington, D.C.
      vs.                 December 18, 2015
                               5:30 p.m.
DNC SERVICES CORPORATION,
d/b/a DEMOCRATIC NATIONAL
COMMITTEE,
       Defendant.
_____/


TRANSCRIPT OF TELEPHONE CONFERENCE RELATING TO POTENTIAL
MOTION FOR TEMPORARY RESTRAINING ORDER
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

APPEARANCES:


For the Plaintiff:            BENJAMIN J. LAMBOITTE, ESQUIRE
                             SEAN C. GRIFFIN, ESQUIRE
                             MATTHEW R. SCHNEIDER, ESQUIRE
                             Garvey, Schubert, Barer
                             1000 Potomac Street, N.W.
                             5th Floor
                             Washington, D.C.  20007
                             (202) 298-2525


ALSO PRESENT:               BRAD DEUTSCH


For the Defendant:           ROBERT BAUER, ESQUIRE
                               Perkins Coie
                             700 13th Street, NW
                             Suite 600
                             Washington, D.C.  20005
                             (202) 654-6200

Court Reporter:                    Lisa M. Foradori, RPR, FCRR
                                   Official Court Reporter
                                   U.S. Courthouse, Room 6706
                                   333 Constitution Avenue, NW
                                   Washington, DC  20001
                                   (202) 354-3269

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

THE COURT:  This is Judge Colleen Kollar-Kotelly and I have a court reporter here.  This is in the matter of the Bernie 2016, Inc., versus DNC Services Corporation d/b/a the Democrat National Committee, 15-cv-2211, based on the complaint that was just filed.  Plaintiffs counsel, if you would identify yourself for the record, please.

MR. LAMBIOTTE:  Benjamin J. Lambiotte of the law firm, Garvey, Schubert, Barer, a member of the court.  And I have with me, co-counsel, who has also entered an appearance, Sean Griffin.  With us as well are Brad Deutsch who is the representative of the Campaign and legal advisor to the Campaign.  And one of my other partners, Matt Schneider of the firm.  That is who is present and that is who has appeared, Your Honor.

THE COURT:  All right.  For the defense.

MR. BAUER:  This is Bob Bauer, law firm of Perkins Coie, General Counsel for the Democrat National Committee and I am here by myself.

THE COURT:  All right.  Then I would ask both counsel as we go forward with this to please give us phone numbers that actually work.  And if you're not at the other end, that somebody goes and gets you so we will not have to spend an hour and half finding the two of you in the future.

I am the emergency judge, and since this matter

1    just got filed, which is after hours, it will be assigned to a

2    regular judge by rotation.  I'm not sure at this point who

3    it's going to go to.  However, because it's filed after hours

4    and because there is an expected TRO, it goes to the emergency

5    judge and that happens to be me this weekend.

6            This is a preliminary discussion, I will obviously

7    have a slightly more complete discussion later, but I just

8    wanted to get moving on this.  The Complaint has just been

9    filed, and frankly, I haven't had a chance to look at it much,

10   other than it appears to be based principally on a breach of

11   contract claim.

12           Mr. Bauer, are you -- presumably you're going to be

13   entering an appearance.  Can you get access to ECF, et cetera,

14   are you signed up?

15           MR. BAUER:  Yes.  It is possible, Your Honor, just

16   to alert you to this, that we will have other outside counsel

17   actually representing the DNC for purposes of this litigation.

18   But certainly in the immediate future on the emergency basis

19   we're now dealing with, I will be here, and do I have access.

20   I did locate the Complaint.  I have not read it, but I did

21   locate it.

22           THE COURT:  Okay.  As long as everybody has access

23   to it.  Let me just set out, as I understand it, piecing it

24   together, and this may not be totally accurate, but just to

25   give a background to what my questions are going to be

1    initially.  This is not a motions hearing because obviously we

2    don't have the motion.

3            As I understand it, DNC maintains voter rolls,

4    which the Sanders' campaign did have access to.  There was a

5    firewall that was set up with donor information relating to

6    the candidates.  I don't know whether it was a systemic

7    failure or whatever.  Evidently, Clinton donor information was

8    made accessible.  I understand that some staff from the

9    Sanders' campaign evidently gained access to this donor

10   information behind the firewall and accessed the Clinton donor

11   information.

12           I know from the news media that certain people have

13   been fired by the Sanders' campaign.  As I understand

14   Mr. Sanders' Complaint at this point is that his campaign has

15   not been given access by the DNC to the voter rolls

16   information, which earlier they had access to.

17           What I'm going to do is, instead of having you all

18   speak at the same time, I'm going to call on you so that we

19   can ascribe the comments to the right people and not have you

20   talking at the same time.  And when you do respond, if I

21   haven't called on you specifically, I'd ask if you'd give your

22   last name so, again, the court reporter ascribes them to the

23   correct information.

24           Is that basically what the request is going to be,

25   Mr. Lambiotte?  Is that in the TRO context what you're

1    claiming is that you want access to the DNC voter rolls that

2    you had before?

3              MR. LAMBIOTTE:  Correct, Your Honor.  That is an

4    accurate summary.  Also, that database that we're being locked

5    out of includes Bernie Campaign specific data to which we're

6    also being deprived of access.  So we just want to make that

7    clear that it will be access to the DNC database but also our

8    own -- behind our firewall data as well.

9              For the balance of the motion, since my colleague

10   Sean Griffin is actually briefing it, I'm going to allow him

11   to address the Court and hand off to him at this point.

12             THE COURT:  Well, let me not go any further than

13   that for right now.  The next question that I have is my

14   understanding the complaint has been filed and I glanced at

15   it, and Mr. Bauer, obviously, hasn't had a chance to read it

16   either.

17             When do you expect to have the TRO to be filed,

18   Mr. Griffin?  I understood it was going to be filed at 6:00,

19   it's now 25 to 6:00.  Is it going to be filed by then?

20             MR. GRIFFIN:  Depending on this phone call, I don't

21   see too much of a problem getting it filed around 6:00, in the

22   next half hour or so.

23             THE COURT:  The next question that I have is -- if

24   the information that was left both in my chambers and that of

25   Judge Collyer, who was called earlier, is that the urgency in

1    terms of doing it over the weekend as opposed to waiting for

2    the Judge -- a Judge will be assigned this evening, the

3    clerk's office is going to be doing that momentarily.  It's

4    actually been assigned to Judge Tonya Chutkan.  So it will be

5    her case as of Monday.

6           So the urgency, as I understood it, is somehow it's

7    related to a debate tomorrow?  If that's the reason, I wasn't

8    quite sure of that.  So that's one question and I'll let

9    plaintiff's counsel answer that.  The other question is

10   whether something can be done -- worked out over the weekend,

11   if there is some urgency related to that, and wait until

12   Monday for Judge Chutkan to deal with this expeditiously, but

13   in a more -- a less hurried manner, shall we say, since there

14   are obviously -- glancing through the Complaint -- there

15   appears to be other issues that are involved with it.  So

16   that's one issue from the plaintiff's perspective.

17          From the defendant's perspective, is there

18   something that -- without my relying on news things, I've been

19   staying away from that, I know it has been all over the news.

20   Is there something that can be done in the short range, even

21   though there may be something that needs to be done in the

22   longer range, that could resolve this?  In other words,

23   something that could be done where they would get access to

24   the information they have with whatever explanation or

25   restrictions or whatever you want to put on it.

1                    So let me start with plaintiff's counsel.  In terms

2     of the urgency -- and is it a debate tomorrow that is the

3     issue of why it's done as a TRO as opposed to moving with a

4     preliminary injunction or something else?

5                    MR. GRIFFIN:  Your Honor, this is Sean Griffin.

6     There are a bunch of issues why it is so urgent.  First of

7     all, this is a matter of general -- without access to his own

8     data, he really can't do much of anything.  He can't contact

9     his voters, the volunteers --

10                   THE COURT:  Excuse me.  The court reporter is

11    having some problems.  It's not going to work, so you're going

12    to have to pick up the phone so that my court reporter --

13                   MR. GRIFFIN:  Is that better?

14                   THE COURT:  Yes.

15                   MR. GRIFFIN:  First of all, this is really a matter

16    of the campaign's functioning moving forward.

17                   THE COURT:  Just a moment.  The question that I

18    asked, and I understand the urgency in a more general sense of

19    your wishing to move forward.  You're filing this, as I

20    understand it, and I haven't -- we don't know -- a TRO -- that

21    it needs to be resolved overnight or by tomorrow before

22    tomorrow night.

23                   I'm asking what the urgency is.  And the message

24    that I got left was that it had something to do with a debate

25    tomorrow.  So I understand --

1              MR. GRIFFIN:  Yes.

2              THE COURT:  -- in general you would like access to

3    this information, and obviously the earlier the better.  But

4    I'm just asking you, the urgency of having it done this way.

5              MR. GRIFFIN:  Yes, Your Honor, you're correct.  The

6    debate is a function of the urgency that we have here.  The

7    debate leads to an engagement among voters -- the Campaign, as

8    you probably know, it takes the use -- the debate to engage

9    their voters, energize their voters and reach out to their

10   voters as possible donors.

11             If we do not have access to possible donors,

12   possible supporters during this time, we're going to lose this

13   crucial time to actually engage people.  And as you probably

14   know, this is the final Democratic debate of the year before

15   the Iowa Caucuses, the New Hampshire Primary.  So this is

16   really our last best chance to reach out to the voters and

17   engage them in a meaningful manner.  And the DNC's actions are

18   preventing the Campaign from doing that.

19             THE COURT:  Mr. Griffin, so between tonight and the

20   debate you need access to be able to contact all of these

21   voters during this period of time; is that what you're saying

22   to me?

23             MR. GRIFFIN:  Yes, we need access to the database

24   to contact these voters.

25             THE COURT:  Between now and the debate tomorrow

1    night?

2             MR. GRIFFIN:  Correct -- the breach -- we would

3    typically be using to engage our voters, our supporters and

4    our donors.  And it is time that we're losing to focus on this

5    issue.

6             THE COURT:  All right.

7             MR. GRIFFIN:  -- publicity surrounding the

8    debate --

9             THE COURT:  You're going to get all of that.  I'm

10   asking a very discrete question, and that simply surrounds

11   between now and the way you've presented it, that it needs to

12   be resolved before tomorrow night, is that you need this

13   information in order to contact them tonight and through

14   tomorrow; is that what you're saying to me?

15            MR. GRIFFIN:  That is what I'm saying, Your Honor.

16            THE COURT:  Let's move to Mr. Bauer.  Mr. Bauer,

17   and I'm not making any rulings here because I haven't had a

18   chance to look, I'm just trying to see if there's a way of

19   resolving this in the short term with an idea of obviously

20   dealing with this in a less hurried way, you know, during the

21   regular business hours and work and where more pleadings,

22   et cetera, could be filed relating to it.  Is the DNC prepared

23   to provide some access or access on a temporary basis with

24   some restrictions or something?

25            MR. BAUER:  Yes.  As a matter of fact, we made that

1    offer a little after 4:00 this afternoon.  The offer was made

2    by our Executive Director to Jeff Weaver, the Campaign manager

3    for the Sanders' campaign.  Our offer, and I'll go into it in

4    as much detail as you want at this point, but the offer

5    essentially was to reverse the suspension, that is, to give

6    complete unrestricted access at the moment to the Democratic

7    National Committee effective today on only the conditions that

8    we receive from the Sanders' campaign, for internal use only,

9    that is to say, not for release to the press, but for our own

10   internal management purposes, an affidavit setting forth the

11   steps that they took to investigate the breach, their

12   findings, and any remediation efforts on their part.

13          We have, from some e-mail exchanges earlier in the

14   last 24 hours, some sense of what it is that they have done to

15   deal with the acts of their staffers, and you mentioned, for

16   example, disciplinary action, but also other steps they took

17   to identify for us what sort of material was inappropriately

18   accessed.  What might have been, for example, not just

19   accessed, but also exported from the system, which is

20   obviously a concern to the other campaign, that there wasn't

21   just only access but there was actually acquisition.

22          And so what we set forth in this e-mail that was

23   sent by Executive Director Amy Davis to Mr. Weaver was four

24   items that we would look for sort of general categories of

25   information, and upon receipt -- and exactly upon receipt,

1    that is to say, not subsequent to any review process, but upon

2    receipt we would immediately reverse the suspension.  And the

3    only additional condition that we put on it was that they --

4    we have reason to believe that they would agree to this from

5    prior conversations, that if we had further questions we

6    needed clarification of any factual matter or there was a

7    conflict, as there currently is between their account and what

8    our systems administrator has believed occurred, that they

9    would agree to work with us cooperatively to clarify those

10   issues.

11           But we would give them not just access, but

12   unrestricted access, beginning upon the receipt of this

13   information tonight, and then work with them on making sure

14   that that information is complete and accurate.

15           THE COURT:  All right.  So back to Mr. Griffin in

16   terms of this offer that has been made, which seems to get

17   what you want, the reverse suspension immediately.  So the

18   question appears to be, as I understand it, a precondition,

19   Mr. Bauer; is that correct?

20           MR. BAUER:  Yes.  We gave identified -- if Your

21   Honor would like, it's not terribly detailed, just the

22   categories of information that we're looking at.  They fall

23   into four categories that --

24           THE COURT:  Let me stop at this point.  Let me just

25   interrupt you for a second.

1              MR. BAUER:  Certainly.

2              THE COURT:  Mr. Griffin, are you aware of the

3    offer?

4              MR. GRIFFIN:  Your Honor, yes, we are aware of the

5    offer.  It's difficult, as the –– destroyed the data that it

6    appears they did not have access to.  So as of now it is hard

7    to describe what we no longer have.  That is the technical

8    difficulty that we have in meeting this standard.

9              THE COURT:  Well, I guess in terms of –– well,

10   let's –– as I understand it, what they're asking from you is

11   for somebody to put in an affidavit to indicate whatever it

12   is –– information that you have relating to this.  If you

13   don't have any information other than the fact that this

14   happened and the data was destroyed, then I assume that is in

15   an affidavit form, which is clearly somebody indicating that

16   this is the truth, then that's the answer.

17             Mr. Bauer, is there a problem if that is the

18   answer?

19             MR. BAUER:  No.  Your Honor, we're going to assume

20   good faith.  If the material that was acquired was destroyed,

21   then what we'd ask simply is that that material, to the best

22   of their recollection, is described and then the circumstances

23   under which it was described also –– excuse me, the certain

24   manner in which it was destroyed also described.  And if

25   that's done –– obviously, they can't produce what they don't

1   have, but at least they can relate to us what they believe

2   they did have and how they came to get rid of it.

3                THE COURT:  Okay.  How about, Mr. Griffin, it seems

4   to me that -- what about that?  Basically if you destroyed it,

5   just indicate how it was destroyed.  And to the extent that

6   anybody knows what the information actually was, of those that

7   were involved with it are left, to simply describe that.  Can

8   you do that?

9                MR. GRIFFIN:  Your Honor, we've already done that.

10  The affidavit accompanying our Complaint describes the

11  destruction of the document and the -- I'm sorry.  We are

12  about to file the affidavit with the Court.  The affidavit

13  that will be filed in the next half hour will describe the

14  information that was destroyed and the circumstances under

15  which it was destroyed.

16               THE COURT:  So let me -- Mr. Griffin --

17  Mr. Griffin, hang on one second.  Obviously you haven't filed

18  the affidavit yet.  So the question is, what about making the

19  affidavit, unless you're still writing it, available to

20  Mr. Bauer?  It may answer the question and obviate the

21  necessity for a TRO.  Why work on the TRO if it looks like

22  Mr. Bauer would be willing to accept this?  Mr. Griffin.

23               MR. GRIFFIN:  Yes, Your Honor.  I think we have

24  that affidavit ready and we can provide that affidavit to the

25  DNC.  It will describe -- and we will have the affidavit

1    certified that the information we obtained has been destroyed

2    and to the -- to the best of -- that we can describe.  I'm not

3    sure what it means by the circumstances other than the fact

4    that it was destroyed, but --

5              THE COURT:  They want to know how you destroyed it.

6    What did you do, burn it?  Shred it?  What did you do with it?

7              MR. GRIFFIN:  It's computer data so it was deleted.

8    So the affidavit will provide that it is -- that information

9    has been deleted.

10             THE COURT:  Was it deleted in such a way that you

11   couldn't find it on the hard drive?

12             MR. GRIFFIN:  Correct.

13             THE COURT:  Okay.  In terms of describing -- does

14   it describe basically what was actually accessed, in general

15   terms, I mean a description?

16             MR. GRIFFIN:  To the best that we can.  To the best

17   we have discovered so far through our investigation it does.

18   We're not holding anything back, but our investigation is

19   still ongoing and, of course, we would be more than happy to

20   supplement our knowledge as we come across more details.  But

21   the affidavit will provide all of the information we have with

22   respect to the information that was obtained.

23             THE COURT:  It seems to me at that point that

24   before you file the TRO that if you could make this affidavit

25   available to Mr. Bauer, that -- Mr. Bauer, if you would take a

1   look at it and see if at least at this point it satisfies what

2   you were asking for in terms of information with an

3   understanding that they will supplement it as they continue

4   with their investigation, and whether that basically resolves

5   what they were going to be requesting in the TRO.

6           MR. BAUER:  Yes, Your Honor.  I certainly would

7   have no objection to that.  The only thing I wanted to mention

8   is that we focused so far in the conversation on the

9   destruction of the material.  The only other items that we

10  wanted to have covered in the affidavit, so we can say that we

11  had an adequate accounting was, if I may, the priority

12  information, not just taken but viewed, because obviously in

13  accessing the site there may have been material exported but

14  there was also material viewed.   So naturally the DNC is

15  interested to know just what was the breadth of the exposure

16  of material inappropriately accessed.

17          Secondly, the number of staff who accessed, viewed,

18  exported or downloaded the information, so we know that -- if

19  the problem is limited to four people on the staff or 20

20  people on the staff or 30 people on the staff, just the scope

21  of people involved, so we have an understanding of the

22  magnitude of the breach.

23          Then there is the third category, which is

24  documentation that the information has been removed, scrubbed,

25  and no longer accessible by anybody on the Sanders' campaign.

1   In other words, the items we're talking about have been

2   destroyed, so presumably no longer available.  If that's the

3   sum total of their information that was obtained and it's all

4   been sort of -- that is what was in fact acquired and

5   destroyed, that's fine.  That would address that item number

6   three.

7          And then the fourth and final item is merely -- I

8   think plaintiff's counsel just touched on this, that we know

9   that there is an ongoing review.  We may want to independently

10  verify to make sure that there's accountability.  We may want

11  to independently verify any facts.  We may want to make sure

12  that we have an opportunity to ask additional questions, and

13  that they would agree to cooperate in that inquiry and work

14  with us toward the sort of resolution of any remaining factual

15  questions.

16         Those were the items that were presented to

17  Mr. Weaver.  That covers both the destruction of the

18  material, but also those other points about the magnitude of

19  the breach.

20         THE COURT:  And did you hear anything back from

21  Mr. Weaver?

22         MR. BAUER:  Not yet, Your Honor.

23         THE COURT:  Okay.  So back to you Mr. Griffin.  I

24  don't know what's in the affidavit.  Does it cover some of the

25  rest of this information or not?

1          MR. GRIFFIN:  Yes, Your Honor.  It does cover a lot

2    of the information he's asking for.  It covers, for example,

3    destruction of the information.  It describes how many people

4    viewed the information.  Given the circumstances, we've given

5    as much detail as we can as far as what information was

6    viewed.  A point that I would like to make is, we're on a

7    strict timeframe.  As of right now the firewall is back up and

8    we need to resume our campaign.

9          So I would like some assurance that the turnaround

10   of the affidavit can happen in a matter of minutes and not

11   hours.

12          THE COURT:  Well, you have to give it --

13          MR. GRIFFIN:  It's a very short affidavit.

14          THE COURT:  Mr. Griffin, it helps if you give it to

15   him.

16          MR. GRIFFIN:  I'm not asking for him to review it

17   before he gets it.

18          THE COURT:  You just indicated a few minutes -- I'm

19   trying to resolve this matter if we can.  If we can't, we'll

20   proceed to the TRO.  I'm perfectly willing to do that, that's

21   what judges do.  But it does seem to me that it's going to

22   take longer, frankly, to litigate this because I'm not going

23   to do it off the top of my head tonight.  You're going to have

24   to file your TRO, he'll have an opportunity to respond and

25   your answer probably would be tomorrow.  We may be able to get

1   this done tonight.

2           My suggestion would be that you whip this affidavit

3   that you got to Mr. Bauer and then you can figure out whether

4   faxing it, e-mailing it, whatever is the better way to do

5   this.  I would ask that, Mr. Bauer, I don't know whether you

6   are the only one that needs to look at this or somebody else.

7   But that you look at it and if you can contact me back, just

8   briefly, along with Mr. Griffith -- is it Griffith or Griffin.

9   Griffin, I'm sorry.  To just say whether the affidavit

10  superficially appears to answer everything or you need

11  something additional, so that we can see whether this can be

12  done this night and we can focus on getting it resolved as

13  opposed to filing the TRO.  If it doesn't get resolved, you

14  file the TRO.

15          So, Mr. Griffin, you need to get -- how do you want

16  this sent to you, Mr. Bauer?

17          MR. BAUER:  However is expeditious -- by e-mail,

18  that's not a problem.

19          THE COURT:  Okay.  If you would send it by e-mail.

20  If you could say within -- how long is the affidavit?  How

21  many pages?

22          MR. GRIFFIN:  The affidavit is six pages.

23          THE COURT:  Okay.

24          MR. GRIFFIN:  We need to have it -- we need to have

25  it signed, the declaration, unless Mr. Bauer is willing accept

1    a draft and then, you know, understanding that the declaration

2    will follow.

3              MR. BAUER:  I am absolutely prepared to accept the

4    draft.

5              THE COURT:  I would ask that you look at it and

6    then, say, 15 minutes, 20 minutes or something.  Just get back

7    and let me know, without your examining it by fine-tooth, does

8    it appear to address the issues that you're interested in?  In

9    other words, would there be something that needs to be done

10   additionally beyond what is in there, so that can I see

11   whether this looks like you can work something out.  I'll wait

12   in chambers, I'm not going anywhere, to see if this looks like

13   this can be done.

14             I would suggest, since you're moving towards this,

15   what appears to be a way of resolving it.  If you can get it

16   done tonight, you'll get the information tonight, Mr. Griffin,

17   as opposed to having to wait potentially until tomorrow for me

18   rule.  I will rule as fast as I can, but I still need to have

19   the other side get an opportunity to respond to your legal

20   claims.  A practical solution seems to me to be a better one,

21   at least at this point.

22             So if you can get the thing e-mailed off.

23   Mr. Bauer if you can call back, obviously with Mr. Griffin on

24   the phone or whoever on the other phone, to let me know

25   whether it looks like it's what you wanted, and so we can

1  figure out how much additional time or anything additional

2  that needs to be done, understanding that they will be getting

3  somebody -- you might want to wait to see if there's something

4  additional that might be requested to be included before you

5  ask whoever it is that's going to be doing the declaration to

6  do it, so that it can be whatever the final version is.  You

7  can actually file it on the record if you want.

8              MR. BAUER:  Your Honor, I apologize, I lost the

9  last part.  I didn't quite follow the last suggestion you made

10 to me.

11             THE COURT:  The last suggestion is, you were going

12 to send him a draft, which is fine.  I would not have the

13 declaration signed quite yet.  Why don't you wait to see

14 whether Mr. Bauer has one additional thing he wants to add

15 that you don't have a problem, so that whoever signs the

16 declaration has a complete declaration that's going to be

17 acceptable to other side, assuming that that happens.

18             MR. BAUER:  Your Honor, this is absolutely fine.

19 This is Bob Bauer for the DNC.  I'm totally comfortable with

20 all of this and I would be happy to proceed on this basis

21 certainly.  The only question I have for you is this.  Our

22 chair is in, it's Congresswoman Wasserman-Schultz, is in

23 Florida.  So my guess is if we can take 15 minutes and just

24 push it up to, say, 20 to 30 minutes.

25             THE COURT:  That's fine.

1          MR. BAUER:  That would be helpful.

2          THE COURT:  I'm not going to go anywhere until you

3     get this resolved, either doing it this way or looking at the

4     TRO.  So I'm going to wait in chambers to hear from you.  It

5     can be whatever time you need.  I was trying to come up with a

6     timeframe, 20 minutes, 25-30 minutes, whatever you need.  I

7     want to make sure that people on the other end are waiting.

8     And the big thing is, does the thing appear to address what

9     you want or is it missing something?

10         MR. BAUER:  Very good.  Absolutely.  The only other

11    question I have, Your Honor is -- well, actually I don't.

12    Yes.  The other question, would you like us to make -- me to

13    contact counsel and basically indicate, you know, either that

14    we're comfortable with it or what more we want before we

15    contact you or do that on the record when we get you on the

16    phone?

17         THE COURT:  It seems to me that if it looks like

18    it's fine and they've given you a draft, you can get me on the

19    record or you can let them know that that's okay and they can

20    get moving on getting whoever it is needs to sign it.  If

21    there's some further discussion you need to have with the

22    other side relating to some additional tinkering or something

23    added, you don't necessarily have to have me on the phone.

24    I'll let you -- since I'm doing this on the record, you may

25    want to have that discussion without it being on the record;

1    go ahead and do so.  I'll just wait here.  I just want to make

2    sure that this moves.

3              MR. BAUER:  Very good.  Well, then if the defense

4    counsel can just provide me with the best number here, then I

5    will respond as soon as I get it within a half hour period.

6              THE COURT:  You mean plaintiff's counsel.

7              MR. BAUER:  I'm sorry.  Well, this is Bob Bauer --

8    plaintiff's counsel, correct.

9              THE COURT:  Okay.

10             MR. BAUER:  And if Mr. Griffin will let me know who

11   to call and what number, I'll get back to them within a half

12   hour.

13             THE COURT:  Mr. Griffin or Mr. Lambiotte, if

14   somebody would be at the other end so if I call I can make

15   sure I get everybody on the phone.  So the way we're going to

16   do this is you're going to send the draft as it is now to

17   Mr. Bauer.  Mr. Bauer will review it and consult with whomever

18   he needs to consult with.  He'll get back to you if there's

19   some additional things that need to be done.  If it looks like

20   it's fine the way it is, he'll get me on the phone and you on

21   the phone and say this is fine.  You will get the declaration

22   and the case -- the TRO, not the case, but the TRO is

23   resolved.

24             If you talk and there's still some issues to be

25   resolved, then call me back and we'll have a discussion about

1    it.  Does that make sense, Mr. Griffin?

2                MR. GRIFFIN:  It makes sense.  Can we have the

3    Court's direct dial number so we can contact you?

4                THE COURT:  Yes.                    .

5                MR. GRIFFIN:                    .

6                THE COURT:  Right.

7                MR. GRIFFIN:  Thank you.

8                THE COURT:  Hopefully this will get resolved

9    quickly.  Thank you.

10                MR. BAUER:  Thank you.

11                THE COURT:  Parties are excused.

12    CONFERENCE ADJOURNED AT 5:55 P.M.

13    COURT RESUMED AT 11:05 P.M.

14                THE COURT:  This is Judge Kollar-Kotelly picking up

15    with the telephone conference call that we had earlier this

16    evening.  So it is now five after 11:00.  And perhaps either

17    Mr. Griffin, or whomever on the plaintiff's side, and

18    Mr. Bauer could indicate to me where you are at this point.

19                MR. GRIFFIN:  Your Honor, we are happy to report we

20    have a deal.

21                THE COURT:  All right.  Who is that?

22                MR. GRIFFIN:  This is Sean Griffin, my apologies.

23    This is Sean Griffin for the plaintiff.

24                THE COURT:  All right.

25                MR. GRIFFIN:  We have agreed on an affidavit that

1    needs signed, and we have agreed on the affidavit's terms.

2            THE COURT:  All right.  So at this point there will

3    be no TRO filed.  And are you filing the affidavit on the

4    record or is it just something that is being consistent

5    between the parties?

6            MR. GRIFFIN:  This will be consistent between the

7    parties.  And correct, Your Honor, there will be no TRO --

8    again, this is Sean Griffin.

9            THE COURT:  All right.

10           MR. BAUER:  Yes, Your Honor.  I want to affirm on

11   the plaintiff's side --

12           THE COURT:  Who is speaking?

13           MR. BAUER:  This is Bob Bauer, for the Democratic

14   National Committee.  I want to just raise very quickly the

15   question, just because I hadn't anticipated it, why this

16   wouldn't be part of the record.  I don't know that we insist

17   on it, but I take it that the defendants -- and we didn't have

18   a chance to discuss this.  Why the defendants are eager to

19   keep it between the parties.  I don't know that we have any

20   objection to that, I just wanted to hear their thoughts on the

21   subject in response to your question.

22           MR. GRIFFIN:  The main reason is -- this is Sean

23   Griffin again.  The main reason is that the affidavit -- the

24   TRO some other -- opinion at this time -- there's no reason to

25   file an affidavit.

1              THE COURT:  All right.  And I thought at the

2    initial discussion, I believe, Mr. Bauer, you said that this

3    could be something that you would keep among yourselves

4    originally, but I was just asking.  I have no --

5              MR. BAUER:  That's fine.  That's fine.  Because I

6    hadn't thought about it, Your Honor, since our last call.

7              THE COURT:  No.

8              MR. BAUER:  I just want to be absolutely clear

9    about sort of where we stood on that and the reasons why.  The

10   only other issue, Your Honor, that I wanted to mention because

11   we're on the record.

12             THE COURT:  Certainly.

13             MR. BAUER:  We did wrap this up very shortly before

14   the end of the call.  And as you know, the agreement, and this

15   is a critical part of it, contemplates so that we can move

16   immediately to the lifting of suspension, which we are

17   committed to do based on this deal.  We're about to turn this

18   back on so they will have access to their data within a matter

19   of minutes now.

20             But we agreed that we -- there's obviously going to

21   be now, because we have been rushing through this, some

22   continuing questions.  And they have committed to fully

23   cooperate with an investigation into these particular matters,

24   address the affidavit.  We had some discussion of our

25   intention to seek an independent review, potentially as part

1   of that.

2          We didn't really arrive at any agreement on the

3   language per se, but we agreed that that would certainly be

4   subsumed within the notion of a full cooperation, that we

5   might bring an independent third party to make sure there was

6   an impartial sort of source of authority on any question that

7   was still outstanding.  So I wanted to put that on the record

8   because I told Mr. Deutsch I would, because we're not -- we

9   didn't want to fiddle further with the language and try the

10  Court's patience.

11         MR. GRIFFIN:  This is Sean Griffin.  I think the

12  affidavit states we agreed to -- of course we --

13         THE COURT:  If you're on -- I'm sorry to keep

14  interrupting here, but the court reporter can't hear you.

15  You're probably on a conference --

16         MR. GRIFFIN:  I just picked up, Your Honor.  My

17  apologies.

18         THE COURT:  Thank you.

19         MR. GRIFFIN:  That is Sean Griffin.  What I said

20  was the affidavit, after much, much effort, I believe it's

21  quite clear, the subject, of course, that we are committed to

22  cooperating fully with the DNC, and we don't have an issue

23  with a third party investigation.  We will cooperate with the

24  DNC investigation and there, of course, will be further

25  questions, but we have committed to working with those

1    questions with the DNC.

2           THE COURT:  All right.  The Post has obviously been

3    calling the Court.  They don't call me because they know I

4    never talk to the press.  So they talked to our person who

5    handles press matters in the Court.  My response to tell her

6    was simply say the parties have resolved it without the need

7    for a TRO, period.  Is that all right with you all?

8           MR. GRIFFIN:  That sounds good for the plaintiff,

9    Your Honor.

10          MR. BAUER:  Yes, that is does.  We obviously --

11          THE COURT:  You can say whatever you want at your

12   end, but I know they're going to want something at our end.

13   So I just wanted to -- that sort of ends it since nothing is

14   going to be filed other than simply the Complaint, which

15   presumably you would go forward and Judge Chutkan will be the

16   Judge who is assigned to it.

17          MR. BAUER:  No objection to your proposed handling.

18   This is Bob Bauer.

19          THE COURT:  All right.  I think that's it, unless

20   there's something else.  So no TRO and no filing of the

21   affidavit.  This was an agreement between yourselves.

22          MR. GRIFFIN:  Thank you very much for your help in

23   resolving this, Your Honor, we very much appreciate it on the

24   plaintiff's side.

25          MR. BAUER:  And on the defendant's side as well,

1    Your Honor.

2              THE COURT:  Well, I think it's certainly better to

3    try to resolve things if you can as opposed to litigating

4    them.  All right.  Have a good evening, everyone.  Take care.

5              MR. GRIFFIN:  You, too, Your Honor.  Thank you,

6    Your Honor.  Good night.

7              MR. BAUER:  Good night.

8    END OF PROCEEDINGS AT 11:15 p.m.

9

10

11              C E R T I F I C A T E

12              I, Lisa M. Foradori, RPR, FCRR, certify that

13   the foregoing is a correct transcript from the record of

14   proceedings in the above-titled matter.

15

16

17   Date:  12-21-15                /s/ Lisa M. Foradori

18                                  Lisa M. Foradori, RPR, FCRR

19

20

21

22

23

24

25